ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 MAR 30 AM 9: 01

CLERK
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

PETER BRASSELER HOLDINGS, L.P.,

Plaintiff,

v.          407CV025

GEBR. BRASSELER GmbH & Co. KG, KOBRA,
INC. d/b/a/ KOMET USA, and KOMET USA, LLC,

Defendants.

# ORDER

## I. INTRODUCTION

Peter Brasseler Holdings, L.P. (Brasseler USA) moves for a temporary restraining order (TRO) and preliminary injunction against Gebr. Brasseler (GBL) in this unfair trade practices case. Doc. # 1. GBL moves to dismiss or, in the alternative, transfer venue to the Northern District of Georgia. Doc. # 17. This Order will address only the TRO motion.

## II. BACKGROUND

Brasseler USA and GBL are in the dental tools business; both parties sell dental drill bits, or "burs." Peter Brasseler, Sr. founded GBL in Germany 1923. Doc. # 1 at 2. Brasseler, Sr.'s son, Peter Brasseler, Jr. founded Brasseler USA in Chicago in 1976 as a subsidiary to GBL. *Id.* at 3. In 2000, the companies split, but Brasseler USA retained the exclusive right to sell GBL-manufactured burs in the United States. Doc. # 27 at 7-8. This "exclusive supply agreement" lasted until 12/31/06, when GBL entered the U.S. bur sales market, utilizing a subsidiary -- Komet -- to sell GBL-manufactured burs.

Komet's initial round of advertising created the issues involved in this case. Komet sent letters to dentists and published an advertisement in a dental trade journal claiming that

> KOMET products are well established in the US dental market. Since 1983, they have been sold in the U.S. by Brasseler USA. The exclusive supply agreement between the manufacturer and Brasseler USA expired at the end of 2006. Now the products the dentist has come to know over the years will be sold in the U.S. directly from the manufacturer. With sales and marketing activities located in Rock Hill, SC, KOMET now offers their complete line of advanced dental rotary instruments and systems in the United States under a new name -- KOMET USA.

Doc. # 13, exh. B (advertisement); *see also id.*, exh. C (letter making similar statements).

In addition, Brasseler USA claims that "[n]ationwide, Defendants' salespeople have made false statements that Brasseler USA has been purchased by GBL or someone else, that Komet is the parent company of Brasseler USA, that Brasseler USA will soon be out of business as it can no longer supply products now distributed by Komet, and/or that it cannot supply all of its products." Doc. # 14 at 5.

Brasseler supports this assertion with affidavits from multiple salespeople, one of whom (Barry Jones) overheard a Komet salesperson tell a dentist that Komet was the parent company of Brasseler USA, and one of whom (Alan Fagan) cleared up confusion of a dentist who, after Komet salesperson Kelly

Smith's visit, believed Komet owned Brasseler USA. *Id.*, exh. A (Jones affidavit); exh. F (Fagan affidavit).

Komet rebutted the Fagan affidavit with testimony from Smith, who testified that she never said anything to anyone at the dentist's office about Brasseler USA. Doc. # 27 at 38. Brasseler USA also presents affidavits describing customer confusion after receiving Brasseler's letter. *Id.*, exh. H (Torgerson affidavit)

Brasseler USA complains that the assertions that "[t]he KOMET products are well established in the U.S. dental market," that KOMET products have been sold by Brasseler USA since 1983, and that an "exclusive supply agreement" existed between GBL and Brasseler USA, as well as the statements made by Komet salespeople regarding the relationship between Komet and Brasseler USA, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) and the Georgia Uniform Deceptive Trade Practices Act (GUDTPA) O.C.G.A. § 10-1-372(a)(2).

## III. ANALYSIS

This Court's discretion to grant a TRO is limited:

> The district court abuses its discretion when it grants a [TRO] in spite of the movant's failure to establish (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.

*Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1516 (11th Cir. 1997) (quotes and alterations omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003)

### A. Likelihood of Success on the Merits

Brasseler USA asserts two types of Lanham Act claims: likelihood of confusion under § 43(a)(1)(A), and false advertising under § 43(a)(1)(B). 15 U.S.C. § 1125(a)(1)(A)-(B). The Court must first determine whether Brasseler USA is likely to succeed on the merits of either claim.

To successfully establish a "confusion" claim, Brasseler USA must, as an initial matter, point to a part of Komet's commercial assertions that is a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125(a)(1); *see Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1412 (11th Cir. 1998) ("there can be no Lanham Act claim if the Gateway's use of 'Sheraton ... Atlanta Airport' is accurate and creates no false impression").

Without a doubt, the Komet salesperson's statement overheard by Barry Jones -- that Komet is the parent company of Brasseler USA -- constitutes a false description of fact.[1] Doc.

---

[1] Despite GBL's protests, the Jones affidavit contains no hearsay. F.R.Evid. 801(d)(2)(D) ("A statement is not hearsay if ... [t]he statement is offered against a party and

2

#14, exh. A. Therefore, Brasseler USA's claim on Komet's salespeople's statements passes the initial Lanham Act inquiry. Some of the statements in the letter and advertisement, however, are another matter. Brasseler USA points to three assertions in Komet's materials that are allegedly false. Komet asserts that (1) "The KOMET products are well established in the U.S. dental market," (2) "[s]ince 1983, they have been sold in the U.S. by Brasseler USA," and (3) an "exclusive supply agreement" existed between Brasseler USA and GBL.

Brasseler USA complains that the first statement misrepresents because "the mark KOMET is not 'well established in the U.S. dental market." Doc. # 14 at 6. The statement, however, refers to "The KOMET *products*," not the mark KOMET. Doc. # 14, exh. B (advertisement) (emphasis added). To the extent that any consumer could be confused about why KOMET considers its products well-established, it is clarified in the next sentence: "Since 1983, they [*i.e.* the KOMET products] have been sold in the U.S. by Brasseler USA."

Brasseler USA, far from viewing this as a clarification, complains that the second statement is false because "Brasseler USA sells its own products under its own brand name." Doc. # 14 at 6. This notwithstanding, it is true and not misleading that, since 1983, Brasseler USA has been selling "[t]he KOMET products,"

---

is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). Brasseler USA presents significant evidence that the Komet salesperson overheard by Jones did not simply "slip up," rather, Komet salespeople are engaging in a pattern of such representations. *See* doc. # 29, exh. A (collecting emails containing misrepresentation stories); doc. # 30, exh. A (same); doc. # 31, exh. 1 (listing summary of phone calls containing misrepresentation stories).

*i.e.* GBL-manufactured products. Though defendants could have substituted the pellucid phrase "the products KOMET will sell," the Court cannot find falsity in the shorter, cleaner phrase "[t]he KOMET products."

Finally, the Komet ad states that "[t]he exclusive supply agreement between the manufacturer and Brasseler USA expired at the end of 2006." Doc. # 14, exh. B. Brasseler USA alleges that this statement creates an impression that Brasseler USA exclusively sold GBL products, even though some of the burs it sold were manufactured elsewhere. The impression is heightened, plaintiff argues, in the phrasing contained in the letter: "Our products have been sold to the US dental market since 1983 by Brasseler USA under an exclusive supply agreement that ended in 2006." Doc. # 14, exh. C. The false impression, Brasseler USA contends, is that any dentist who used to buy burs from Brasseler USA will now be able to get the same burs from Komet. This impression is false, concludes plaintiff, because not all the burs sold as Brasseler USA burs were manufactured by GBL. Doc. # 14 at 6.

The Court agrees that the impression created by the letter and advertisement in discussing the "exclusive supply agreement" constitutes a misleading description of fact for Lanham Act purposes. This conclusion is bolstered by the sentence following the discussion of the "exclusive supply agreement" in the advertisement: "Now the products the dentist has come to know over the years will be sold in the U.S. directly from the manufacturer." Doc. # 14, exh. B. The unmistakable thrust of the sentences is that pre-2007 Brasseler USA burs and Komet burs are equivalent. Because many of the burs sold by Brasseler USA before 2006 were not manufactured by GBL, this impression is false.

3

Therefore, along with the statements made by Komet salespeople, the impression created by Komet's discussion of the "exclusive sales agreement" passes the initial Lanham Act inquiry.

Brasseler USA's first claim is a derivation of the traditional likelihood of confusion doctrine. 15 U.S.C. § 1125(a)(1)(A).

> Likelihood of confusion for purposes of § 43(a) of the Lanham Act is determined by analysis of a number of factors, including: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, *i.e.*, retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, *e.g.*, does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion.

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984).

> As the first two factors suggest, the [likelihood of confusion] factors are more typically applied in cases alleging the use of a confusingly similar trade or service mark. However ... courts have also engaged in [likelihood of confusion]-type analysis in cases where the false designation is "allegedly accomplished largely through clever use and manipulation of subtle language, context, innuendo, and false descriptions, rather than a confusingly similar trade or service mark."

*Register.com v. Domain Registry of America, Inc.*, 2002 WL 31894625, at *9 (S.D.N.Y. Dec.27, 2002).

*Varsity Gold, Inc. v. Elite Fundraising LLC*, 2005 WL 2246468 at *5 n. 1 (W.D. Wash. 2005) (unpublished). In these cases the defendant is not using a similar mark to confuse consumers about the current origin of products, rather the defendant is spinning the truth about past consumption to create the illusion that its brand represents the status quo.

For example, in *Varsity Gold*, the competing businesses developed "fundraising cards" -- cards offering discounts at a variety of local businesses -- for schools to sell in order to raise revenue. *Id.* at *1. Elite Fundraising, a startup, began competing with the well-established fundraiser-card company Varsity Gold. Part of Elite's sales strategy was to locate businesses that had previously participated in Varsity Gold's program, and ask those businesses to "'renew' or 'participate again' in a fundraising card." *Id.* at *5. Though Elite was not using a similar mark to confuse customers, the court applied the likelihood of confusion factors and found a false designation of origin claim under the Lanham Act. *Id.* at *7.

This Court will undertake the likelihood of confusion inquiry by using the final four factors enumerated in *Conagra*.

(1) *Similarity of Products*: The products in this case are identical -- dental burs.

(2) *Similarity of Advertising Methods*:

4

Brasseler USA and Komet both solicit business by direct sales to dentists' offices.

(3) *The Defendant's Intent*: GBL's intent, as evidenced by the description of Komet's products as "the products the dentist has come to know over the years," and by the misrepresentations of its sales force, is to create the impression that Komet is the new place to purchase Brasseler USA burs. The defendant hopes to catapult its bur-sales business by creating the false impression that every pre-2007 bur that a dentist bought from Brasseler USA came from the manufacturer now selling through Komet.

(4) *Proof of Actual Confusion*: Plaintiff presents affidavits containing evidence that dentists are actually confused about where to buy Brasseler USA burs. Doc. # 14, exh. A ¶ 3, exh. F ¶ 4, exh. G ¶ 5; doc. # 29 ¶ 3; doc. # 30 ¶ 3; doc. # 31 ¶¶ 3-7; *see also* doc. # 29, exh. A (collecting emails); doc. # 30, exh. A (same); doc. # 31, exh. 1 (listing summary of phone calls). In other words, defendants' description of the "exclusive supply agreement" and statements by salespeople have each (separately and independently) confused consumers into believing that the only place to buy Brasseler USA burs is from Komet.

Because every factor weighs toward a finding of confusion, the Court concludes that Brasseler USA has established a likelihood of success on the merits on its likelihood of confusion claim. As Brasseler USA has established likelihood of success on this claim, the Court need not discuss its separate, false advertising claim.

### B. Irreparable Injury

When a party establishes a likelihood of consumer confusion, irreparable injury is presumed. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988) ("In a Lanham Act case a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm...."); *Register.Com, Inc. v. Domain Registry of America, Inc.*, 2002 WL 31894625 at * 16 (S.D.N.Y. 2002) (unpublished); *Telebrands Corp. v. Media Group, Inc.*, 1997 WL 790567 at *3 (S.D.N.Y.1997) (unpublished) ("a finding of irreparable harm is warranted in a context where the parties are direct competitors and some evidence is adduced to suggest that consumers are misled by defendant's advertising").

### C. Balancing Harms

A properly limited TRO will do little harm to GBL. On the other hand, if the Court refuses an injunction, GBL could continue making solicitations via letter, advertisement, and sales calls that lead consumers to believe that Komet burs are equivalent to pre-2007 Brasseler USA burs.

### D. Adverse to the Public Interest

As limited, the TRO will not be adverse to, and in fact will benefit, the public interest. Such a TRO will "protect the ability of consumers to distinguish among competing producers," one of the main purposes behind the Lanham Act. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985). For this and the other reasons outlined, the Court concludes that injunctive relief is proper

in this case.

## IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Peter Brasseler Holdings, L.P.'s motion for a temporary restraining order and preliminary injunctive relief. For the pendency of this litigation, defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, *see* F.R.Civ.P. 65(d), are enjoined from the following:

- Making or publishing any statements that Brasseler USA is out of business or will soon be out of business;

- Making or publishing any statements that Brasseler USA can no longer supply burs or other dental products;

- Making or publishing any statements that Komet or GBL is the parent company of Brasseler USA;

- Making or publishing any statement that discusses the "exclusive supply agreement" without clarifying that GBL was one of multiple manufacturers of Brasseler USA burs.[2]

This 3d day of March, 2007.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[2] The following suggestions remove the unacceptable implications:

> In place of "The exclusive supply agreement between the manufacturer and Brasseler USA expired at the end of 2006," *use*: "The agreement requiring the manufacturer to sell exclusively to Brasseler USA expired at the end of 2006."

> Instead of "Our products have been sold to the US dental market since 1983 by Brasseler USA under an exclusive supply agreement that ended in 2006. Our products will continue being sold and marketed directly from the manufacturer under the subsidiary name of Komet USA, headquartered in Rock Hill, SC," *use* "These products have been sold to the US dental market since 1983 by Brasseler USA. Because the agreement requiring the manufacturer to sell exclusively to Brasseler USA expired at the end of 2006, these products will now be sold and marketed directly from the manufacturer under the subsidiary name of Komet USA, headquartered in Rock Hill, SC."

Walker

Wayne faxed to all parties per Judge's instructions.

*John Tatum*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

PETER BRASSELER HOLDINGS, L.P.,

Plaintiff,

v.     407CV025

GEBR. BRASSELER GmbH & Co. KG, KOBRA,
INC. d/b/a/ KOMET USA, and KOMET USA, LLC,

Defendants.

## ORDER

### I. INTRODUCTION

Peter Brasseler Holdings, L.P. (Brasseler USA) moves for a temporary restraining order (TRO) and preliminary injunction against Gebr. Brasseler (GBL) in this unfair trade practices case. Doc. # 1. GBL moves to dismiss or, in the alternative, transfer venue to the Northern District of Georgia. Doc. # 17. This Order will address only the TRO motion.

### II. BACKGROUND

Brasseler USA and GBL are in the dental tools business; both parties sell dental drill bits, or "burs." Peter Brasseler, Sr. founded GBL in Germany 1923. Doc. # 1 at 2. Brasseler, Sr.'s son, Peter Brasseler, Jr. founded Brasseler USA in Chicago in 1976 as a subsidiary to GBL. Id. at 3. In 2000, the companies split, but Brasseler USA retained the exclusive right to sell GBL-manufactured burs in the United States. Doc. # 27 at 7-8. This "exclusive supply agreement" lasted until 12/31/06, when GBL entered the U.S. bur sales market, utilizing a subsidiary -- Komet -- to sell GBL-manufactured burs.

Komet's initial round of advertising created the issues involved in this case. Komet sent letters to dentists and published an advertisement in a dental trade journal claiming that

KOMET products are well established in the US dental market. Since 1983, they have been sold in the U.S. by Brasseler USA. The exclusive supply agreement between the manufacturer and Brasseler USA expired at the end of 2006. Now the products the dentist has come to know over the years will be sold in the U.S. directly from the manufacturer. With sales and marketing activities located in Rock Hill, SC, KOMET now offers their complete line of advanced dental rotary instruments and systems in the United States under a new name -- KOMET USA.

Doc. # 13, exh. B (advertisement); *see also id.*, exh. C (letter making similar statements).

In addition, Brasseler USA claims that "[n]ationwide, Defendants' salespeople have made false statements that Brasseler USA has been purchased by GBL or someone else, that Komet is the parent company of Brasseler USA, that Brasseler USA will soon be out of business as it can no longer supply products now distributed by Komet, and/or that it cannot supply all of its products." Doc. # 14 at 5.

Brasseler supports this assertion with affidavits from multiple salespeople, one of whom (Barry Jones) overheard a Komet salesperson tell a dentist that Komet was the parent company of Brasseler USA, and one of whom (Alan Fagan) cleared up confusion of a dentist who, after Komet salesperson Kelly

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 MAR 30 AM 9:01

CLERK_____
SO. DIST. OF GA.

************ -COMM. JOURNAL- ***************** DATE MAR-30-2007 ***** TIME 08:45 ********

MODE = MEMORY TRANSMISSION

FILE NO.=967

| STN NO. | COMM. | ONE-TOUCH/ABBR NO. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ▽ | 9-2364936 | 006/006 | 00:03:01 |

START=MAR-30 08:40   END=MAR-30 08:45

***** UF-8000 ***************** -U.S. DISTRICT CO- ***** - 912 650 4030- *********

*PAUL PAINTER*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 MAR 30 AM 9:01

CLERK
SO. DIST. OF GA.

PETER BRASSELER HOLDINGS, L.P.,

Plaintiff,

v.     407CV025

GEBR. BRASSELER GmbH & Co. KG, KOBRA, INC. d/b/a/ KOMET USA, and KOMET USA, LLC,

Defendants.

## ORDER

### I. INTRODUCTION

Peter Brasseler Holdings, L.P. (Brasseler USA) moves for a temporary restraining order (TRO) and preliminary injunction against Gebr. Brasseler (GBL) in this unfair trade practices case. Doc. # 1. GBL moves to dismiss or, in the alternative, transfer venue to the Northern District of Georgia. Doc. # 17. This Order will address only the TRO motion.

### II. BACKGROUND

Brasseler USA and GBL are in the dental tools business; both parties sell dental drill bits, or "burs." Peter Brasseler, Sr. founded GBL in Germany 1923. Doc. # 1 at 2. Brasseler, Sr.'s son, Peter Brasseler, Jr. founded Brasseler USA in Chicago in 1976 as a subsidiary to GBL. Id. at 3. In 2000, the companies split, but Brasseler USA retained the exclusive right to sell GBL-manufactured burs in the United States. Doc. # 27 at 7-8. This "exclusive supply agreement" lasted until 12/31/06, when GBL entered the U.S. bur sales market, utilizing a subsidiary — Komet — to sell GBL-manufactured burs.

Komet's initial round of advertising created the issues involved in this case. Komet sent letters to dentists and published an advertisement in a dental trade journal claiming that

KOMET products are well established in the US dental market. Since 1983, they have been sold in the U.S. by Brasseler USA. The exclusive supply agreement between the manufacturer and Brasseler USA expired at the end of 2006. Now the products the dentist has come to know over the years will be sold in the U.S. directly from the manufacturer. With sales and marketing activities located in Rock Hill, SC, KOMET now offers their complete line of advanced dental rotary instruments and systems in the United States under a new name -- KOMET USA.

Doc. # 13, exh. B (advertisement); *see also id.*, exh. C (letter making similar statements).

In addition, Brasseler USA claims that "[n]ationwide, Defendants' salespeople have made false statements that Brasseler USA has been purchased by GBL or someone else, that Komet is the parent company of Brasseler USA, that Brasseler USA will soon be out of business as it can no longer supply products now distributed by Komet, and/or that it cannot supply all of its products." Doc. # 14 at 5.

Brasseler supports this assertion with affidavits from multiple salespeople, one of whom (Barry Jones) overheard a Komet salesperson tell a dentist that Komet was the parent company of Brasseler USA, and one of whom (Alan Fagan) cleared up confusion of a dentist who, after Komet salesperson Kelly

********** COMM. JOURNAL ********** DATE MAR-30-2007 ***** TIME 08:42 ********

MODE = MEMORY TRANSMISSION

FILE NO.= 966

| STN NO. | COMM. | ONE-TOUCH/ABBR NO. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | | 9-2332281 | 006/006 | 00:01:31 |

START=MAR-30 08:40    END=MAR-30 08:42

***** UF-8000 ********************** -U.S. DISTRICT CO- ***** -   912 650 4030- *********
-   -U.S. DISTRICT COURT