UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

PETER BRASSELER HOLDINGS, L.P.,
and BRASSELER USA, INC.,

Plaintiff,

v.  407CV025

GEBR. BRASSELER GmbH & Co. KG, KOBRA,
INC. d/b/a/ KOMET USA, and KOMET USA, LLC,

Defendants.

## ORDER

### I. BACKGROUND

Peter Brasseler Holdings, L.P. and Brasseler USA, Inc. (hereafter for convenience, BUSA) brought this unfair trade practices case against Gebr. Brasseler GmbH & Co. KG, Kobra, Inc., d/b/a/ Komet USA, and Komet USA, LLC (hereafter for convenience, GBL). Doc. # 1, *as amended*, doc. ## 26, 68. After a preliminary injunction hearing, doc. # 27 (transcript) and Preliminary Injunction Order, doc. # 36, BUSA sought another preliminary injunction, and GBL sought one of its own. Doc. ## 73, 80, 98-103. Following an 11/15/07 hearing, the Court granted BUSA's preliminary injunction motion and denied GBL's. Doc. # 109. Discovery, meanwhile, closes on 1/2/08. Doc. # 115.

The Court sealed its 11/21/07 injunction Order because it quoted from sealed documents. Doc. # 109 at 13. It gave the parties 10 days to show why the Court should not unseal that Order. *Id.* Ten days have elapsed with no response, so the Court this day will issue an amended, unsealed (with minor stylistic changes) Order, thereby unsealing it. In that connection, the Clerk shall lift the online-docketing "sealed" command on docket # 109.

Meanwhile, the parties have filed more motions. Doc. # 112 (GBL's Motion to Stay); # 114 (GBL's Motion for a Security Bond); # 121 (GBL's Motion to Dissolve, if not Amend Injunction); # 126 (GBL's Motion for a Protective Order); # 127 (BUSA's Motion to Expedite Discovery); # 128 (BUSA's Motion for Contempt). The time to respond to some of them has not yet elapsed, however. Meanwhile, familiarity with the facts set forth in the Court's 11/21/07 Order is presumed here.

### II. ANALYSIS

#### A. GBL's Motions To Stay

Upon the appeal of an injunction,

> the District Court may, in its discretion, suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as the court considers proper for the security of the rights of the adverse party. As differentiated from a stay of a money judgment, the issuance or stay of an injunction pending appeal is within the discretion of the court, even though bond is tendered.

2 FED. PROC. FORMS (*Supersedeas bonds—Bond on issuance or stay of injunction pending appeal*) § 3:76 (Nov. 2007) (footnote omitted). The Court's 11/21/07 Order

> preliminarily enjoined [GBL] from using and distributing the above-described Komet catalog, in both printed and unprinted (Internet, etc.) form, and [GBL] must recall, remove and destroy same. [GBL was] also preliminarily enjoined from using the marks VARIO, CRF, CERAPOST and CENTURY PAK for dental and related products, and [it] must recall and destroy all products and advertising bearing such infringing marks

in any form, electronic or otherwise.

Doc. # 109 at 13.

Citing F.R.App.P. 8(a)(1), doc. # 112 at 1, GBL moves the Court to stay and suspend the preliminary injunction,[1] arguing that the

> injunction requires the recall and destruction of KOMET USA's catalogs, however, it will effectively remain in place for months after any successful appeal or dissolution, because KOMET USA will have no remaining stock of its current catalogs to begin distributing again.... [And,] it is not even possible to comply fully with the recall order, and an attempt to partially comply would costs hundreds of thousands of dollars for which [BUSA has] given no security as required by [F.R.Civ.P. 65]. The recall order contained in the injunction is broader than necessary to protect Plaintiffs' interests pending final judgment. Because it works unnecessary and irreparable harm on [BUSA], GBL ... respectfully request[s] that the Court suspend the preliminary injunction pending the outcome of the appeal, or in the alternative, suspend that portion of the injunction that requires recall and destruction.

Doc. # 112 at 1-2.

GBL explains that, by preventing all use of the KOMET USA catalog, the injunction will cause BUSA an irreparable loss of customers because neither the purchasers nor seller can use the catalog for the purely functional purpose of knowing what products are available for sale.

And even if GBL wins reversal on appeal and BUSA compensates GBL for the value of the approximately 45,000 undistributed catalogs it must now destroy, that payment will not fully compensate GBL for its loss. *Id.* at 3. Staying this matter will leave the parties where they have been, GBL contends, and it emphasizes that BUSA waited *8 months* after filing its Complaint before it even sought such injunctive relief, which means that the parties have been competing in the marketplace for 11 months without any catastrophic consequences. *Id.* at 3, 8.[2]

---

[1] GBL is just a little off here. As the Seventh Circuit, after adverting to the "sliding scale" approach (noted by this Court in doc. # 109 at 9), explains:

> There is a difference between asking a district court for a preliminary injunction and asking a court of appeals for a stay of, or other relief from, the district court's ruling. But the sliding-scale approach is also applied in such a case. *Id.*; *Sofinet v. INS*, 188 F.3d 703, 706-07 (7th Cir.1999); *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300-01 (7th Cir.1997); *cf. Hilton v. Braunskill*, 481 U.S. 770, 777-78, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). As the Supreme Court explained in *Hilton*, "different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. *See* Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same." *Id.* at 776, 107 S.Ct. 2113.

*Cavel Intern., Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007).

[2] Timeliness with which one seeks relief is a factor that courts consider. *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 514 F.Supp.2d 119, 127-28 (D. Mass. 2007) (land-water sightseeing tour operator's timing in suing

Plus, GBL further contends, this Court failed to make BUSA post an injunction bond as required by F.R.Civ.P. 65(c). *Id.* at 2. The injunction also should be stayed pending appeal, it contends, because this Court failed to guide it on what catalog revisions will render it non-infringing -- guidance required by law (*i.e.*, findings as to which elements or combination of elements of BUSA's claimed trade are protectable). *Id.* at 5.

Next, GBL contends, the injunction is overbroad because it enjoins the whole catalog when only parts of it violate BUSA's rights.[3] *Id.* at 6. GBL reminds the Court that it issued a *preliminary* injunction, which means to maintain the status quo pending a permanent and final resolution of the matter. *Id.* at 7. Forcing a party to destroy its goods goes further than restraining infringement at the status quo level, it emphasizes. *Id.* BUSA responds that

(a) *it* is suffering irreparable harm by virtue of GBL's infringement (causing BUSA injury to its goodwill, reputation, etc.) and this Court already made that finding when it granted its injunction;

(b) it did not unreasonably delay in seeking relief, GBL was not prejudiced in any event and, for that matter, this is a new argument[4];

(c) the fact that GBL failed to "place a monetary value on any harm [it] may suffer in destroying [its] catalogs and creating new ones" indicates that it will not suffer irreparable harm without a stay -- it has a nationwide sales force and ample advertising outlets enabling sales via non-infringing marketing; and

(d) BUSA itself will be irreparably harmed if a stay is granted, as BUSA has already shown customer confusion which will only be augmented absent the offending catalogs' removal from the market.

Doc. # 125 (paraphrased).

**B. F.R.Civ.P. 65(c) Security Motion**

Evidently anticipating BUSA's "no monetary amount" response to its "stay" motion argument, GBL has followed up with a separate, Rule 65(c) "security bond" motion. Doc. # 114. GBL requests $834,437 to cover destroyed catalog/reprinting costs, *if* this Court does not grant it a stay. *Id.* at 2-4. And, it seeks $1,024,000 if the Court's injunction Order is construed to compel it to abandon the use of

---

competitor for trademark infringement and tortious interference with business relationships was neither unreasonable nor a bar to preliminary injunctive relief; operator promptly responded to increased occurrences of actual confusion that resulted when competitor opened its business in Boston). BUSA filed its Complaint on 2/22/07, doc. # 1, *as amended* on 3/26/07, doc. # 26, *as amended* on 6/26/07, doc. # 68. This Court granted BUSA its first preliminary injunction (on different relief than on that which is the subject of the instant motion) on 3/30/07, doc. # 36, and GBL Counterclaimed on 5/25/07, doc. # 58, *as amended* on 7/11/07, doc. # 70. GBL moved for its own preliminary injunction on 8/24/07, doc. # 73, and BUSA moved for its second (hence, the instant) preliminary injunction on 9/14/07, doc. # 80, which this Court granted on 11/21/07. Doc. # 109.

[3] GBL, however, fails to proffer any realistic method by which the Court can enjoin the distribution of only "part" of a bound catalog.

[4] The Court was under the impression that both sides filed for, but delayed in actually seeking, injunctive relief, because they had been talking settlement. In any event, since both sides delayed in seeking a hearing and relief, the Court will disregard delay-based contentions advanced here.

3

KOMET product drawings that originated with GBL. *Id.* at 4 n. 2.[5]

GBL's "security bond" argument has legs. "The purpose of the bond is to provide security for any damages resulting from an improvidently granted injunction." *Rauch Industries, Inc. v. Radko*, 2007 WL 3124647 at * 8 (W.D.N.C. 10/25/07) (unpublished). Rule 65(c)

> specifies that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." A district court has "wide discretion to set the amount of a bond, and even to dispense with the bond requirement," *Doctor's Assocs. v. Distajo*, 107 F.3d 126, 136 (2d Cir.1997); however, this Court is "required to make this determination before it enter[s] the preliminary injunction,"[6] *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir.2004).

*Romag Fasteners, Inc. v. J.C. Penney, Inc.*, 2007 WL 4225792 at * 6 (D.Conn. 11/28/07) (unpublished) (footnote added) ($50,000 bond for 10-day injunction to stop department store chain from selling counterfeit handbag "snaps"); *see also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1384-85 (2nd Cir. 2006) (district court's setting of injunction bond in amount of $400 million, upon grant of preliminary injunction in favor of plaintiff patentee in suit for infringement of drug patent by competitor that marketed generic version of drug, was not abuse of discretion, despite competitor's claim that amount failed to provide sufficient security because it represented only 10% of annual market and ignored competitor's loss of market share; determination was based on evidence that concerned competitor's potential lost profits, lost market share, and associated costs of relaunch in the event of wrongful enjoinment); *Boston Duck Tours,* 514 F.Supp.2d at 128-129.

However, as BUSA points out (doc. # 129 at 1), the Eleventh Circuit

> has stated previously, in dicta, that "before a court may issue a preliminary injunction, a bond must be posted," *Piambino v. Bailey*, 757 F.2d 1112, 1143 (11th Cir.1985), but it is well-established that "the amount of security required by the rule is a matter within the discretion of the trial court ...[, and] the court may elect to require no security at all." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B 1981) (citation and quotation marks omitted).

*BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission*, 425 F.3d 964, 971 (11th Cir. 2005). BUSA thus argues for no or at most a nominal bond. Doc. # 129 at 1-3.

GBL's "bond" motion is best considered in conjunction with its stay motion, and both must be viewed in context. As this Court previously mentioned, this is a "family feud." Doc. # 109 at 8. The blood-letting is enriching the lawyers at the expense of two different businesses that sprang from one. What should have been long ago settled rages on with motion after motion. It is apparent that, rather than resolve their differences short of litigation, each side simply

---

[5] BUSA does not respond to this. The Court does not so construe its 11/21/07 injunction in that matter.

[6] This Court erroneously did not.

4

wants the other to bleed.

That definitely violates the holiday spirit, so both sides should now pay for such bad cheer. The Court therefore denies in part and grants in part GBL's stay motion: GBL must "quarantine"[7] (but need not now destroy) all in-house catalogs pending appeal, and it is relieved from retracting those already distributed.[8] That will decrease the amount of potential, "appellate-reversal" damages. And that, in turn, rightly decreases to zero the Rule 65(c) bond BUSA should otherwise have to post.

### C. Discovery Matters

Meanwhile, discovery ends 1/2/08, doc. # 115, and the parties are fighting on that front, too. BUSA wants to depose Clara Niehus, an elderly Brasseler family member who, according to GBL, is uninvolved in GBL's business operations and knows precious little, so deposing her would constitute harassment.[9]

Doc. # 126 at 2.

BUSA, however, has until 12/31/07 to respond to this 12/10/07-filed motion, so the Court cannot yet rule on it. Still, discovery expires just days later, so a ruling is required now. Meanwhile, BUSA itself wants GBL to hurry up and respond early on discovery it wants because:

(a) GBL has filed the above-mentioned motion to dissolve (if not amend) the injunction;

(b) that motion relies on a study;[10]

(c) BUSA wants the documents relied upon in that study, so they should be

---

[7] If BUSA cannot trust GBL to store and not use GBL's existing stock of catalogs on its own, then BUSA can pay to have a third party store them, and the parties are directed to work out arrangements for this on their own.

[8] The parties dispute GBL's estimated catalog-retrieval costs. Doc. # 112 at 2; # 129 at 4. BUSA insists that GBL could save a lot of money by having its nationwide sales force retrieve and destroy catalogs, and somehow have its customers return its catalogs to it using regular U.S. mail. Doc. # 129 at 4. That is, on its face, unrealistic (*e.g.*, how many customers could reasonably be expected to take the time to round up and mail back a *catalog* to a vendor?). Unsurprisingly, BUSA furnishes *no* cost estimate, let alone a reasonable one, with this or its "nationwide sales-force" suggestion.

[9] GBL says that she

> is the daughter of Peter Brasseler, Sr. She is a majority limited partner in GBL and has a majority interest in the company that manages it as its general partner. She sits on an advisory council to GBL's managing directors. She does not receive a salary from GBL, and she does not have involvement in the company's day-to-day affairs. She has no legal authority to bind the company.

Doc. # 126 at 2. GBL emphasizes that it has already obtained a protective order from the Fulton County state court in the related litigation noted in this Court's 11/21/07 Order, doc. # 109 at 11-12, and BUSA has taken the depositions of fourteen of GBL's witnesses, including all three of GBL's managing directors. Through all of this discovery, GBL claims, BUSA has "not identified any particular reason why Mrs. Niehus should be deposed in this matter." Doc. # 126 at 2.

[10] The study, just received by GBl on 11/30/07 and turned over to BUSA that day, documented the results of a survey of 383 dentists. It shows, according to GBL, that the catalogs that are the subject of this Court's injunction "are not inherently distinctive and do not have secondary meaning. Because this evidence disproves a necessary element of [BUSA's] trade dress claim," GBL concludes, "the preliminary injunction should be dissolved." Doc. # 121 at 1-2.

5

immediately available;

(d) BUSA needs those documents in order to respond to the "dissolve" motion by the 12/21/07 deadline.

Doc. # 127 at 1-2 (paraphrased).

BUSA filed that motion, however, on 12/11/07, so GBL, too, has until 12/31/07 to respond. Yet, that would moot the accelerated-response-time issue that BUSA now raises.

### D. Contempt

On top of all that, BUSA moves this Court to hold GBL in contempt, arguing that GBL, in violation of the above-quoted injunction, is using the mark CERAPOST on GBL's website, www.kometusa.com. Doc. # 128 at 1.

### E. "Christmas Sausage"

Christmas approaches, however, so the undersigned must drive to the country to purchase holiday sausage. Meanwhile, it is clear that this family wants to keep feuding and financially bleeding. So, it is time to make some sausage here. The Court therefore grants BUSA's expedited discovery motion and defers on GBL's dissolution motion until after BUSA has had a chance to respond. The same must be said for BUSA's contempt motion; GBL still has time to respond, though the Court's 12/17/07 visit to its kometusa.com website shows that it is "temporarily unavailable." So if GBL has complied and thus mooted the contempt motion, then BUSA should withdraw the motion itself.

Finally, the Court will err on the side of discovering any and all potentially useful information to bring this expensive litigation to a close. GBL's protective-order motion therefore is denied.

### III. CONCLUSION

Accordingly, the Court:

(a) is unsealing its 11/21/07 Order, doc. # 109, by re-issuing it as an Amended Order concurrently with this Order[11];

(b) *DENIES* defendants' motion for a protective order, doc. # 126;

(c) *GRANTS* plaintiffs' motion for expedited discovery, doc. # 127;

(d) *GRANTS* in part and *DENIES* in part defendants' motion to stay, doc. # 112;

(e) *DENIES* defendants' motion for a Rule 65(c) security bond; and

(f) *DEFERS* on defendants' dissolution motion, doc. # 121, as well as plaintiff's contempt motion, doc. # 128.

This __17__ day of December, 2007.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[11] The Clerk shall lift the online-docketing "sealed" command on doc. # 109, and amend its docket entry to denote this directive.